IN THE IOWA DISTRICT COURT FOR CLARKE COUNTY

| | |
|---|---|
| CLARKE COUNTY DEVELOPMENT CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>AFFINITY GAMING, LLC; HGI-LAKESIDE, LLC,<br><br>    Defendants. | CASE NO. ʹʹʹ ʹʹʹ LACV 011656<br><br><br>**PETITION AT LAW** |

COMES NOW the Plaintiff, Clarke County Development Corporation, and for its cause of action against Defendants, Affinity Gaming, LLC and HGI-Lakeside, LLC (collectively "Defendants"), states as follows:

### NATURE OF THE LAWSUIT

1.     CCDC brings this action seeking a declaratory ruling that the parties' Management and Operation Agreement ("Management Agreement") may not be assigned without CCDC's consent.  As discussed below, CCDC and the Defendants are parties to a Management Agreement for the operation of the Lakeside Casino located in Osceola, Iowa.  The Defendants, Affinity Gaming, LLC and HGI-Gaming, LLC, are owned by hundreds of lenders and former creditors of the previous owner of Lakeside Casino, Herbst Gaming, Inc.  Upon information and belief, such lenders have never owned or operated a casino; rather, they are in the business of making loans and liquidating collateral.  The Defendants have represented to CCDC that they believe that the parties' Management Agreement is freely assignable.  Accordingly, CCDC now seeks a declaratory ruling to prevent the Defendants from transferring the parties' Management Agreement without first obtaining CCDC's consent.

1

## THE PARTIES

2.      Plaintiff, Clarke County Development Corporation ("CCDC"), is a nonprofit corporation duly organized and existing under the laws of the State of Iowa with its principal place of business located at 115 East Washington Street, Osceola, Iowa 50213. CCDC is a nonprofit corporation whose purpose is to promote business development in Clarke County, Iowa. CCDC is licensed to conduct gambling games under Iowa Code Chapter 99F and is the nonprofit sponsoring organization for Lakeside Casino located in Osceola, Iowa.

3.      Upon information and belief, Affinity Gaming, LLC ("Affinity"), is a Nevada limited liability company with a principal place of business located at 3440 West Russell Road, Las Vegas, Nevada 89118. Affinity owns Lakeside Casino located in Osceola, Iowa.

4.      Upon information and belief, HGI-Lakeside, LLC ("HGI-Lakeside") is a Nevada limited liability company with a principal place of business located at 3440 West Russell Road, Las Vegas, Nevada 89118. HGI-Lakeside is a wholly owned subsidiary of Affinity Gaming, LLC. HGI-Lakeside is licensed to operate gambling games under Iowa Code Chapter 99F and is the for-profit operator of the Lakeside Casino located in Osceola, Iowa.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the parties to and subject matter of this action because the agreement described below was to be performed in whole or in part in Clarke County, Iowa. In addition, the Defendants have an office located in Clarke County, Iowa and this matter arises out of or in connection with the business of such office.

6.      Venue is appropriate in this Court pursuant to Iowa Code § 616.7 and § 616.14.

## FACTUAL BACKGROUND

I.     **The Parties' Management Agreement.**

7.     CCDC is a party to a Management Agreement with the Defendants that provides for the Defendants' operation of the Lakeside Casino pursuant to Iowa Code Chapter 99F.

8.     Iowa Code Chapter 99F provides that a license may be obtained by a non-profit corporation from the Iowa Racing and Gaming Commission ("Commission") for the conducting of gambling operations.  Chapter 99F also provides that a non-profit organization may enter into a management agreement with a for-profit organization for the operation of an excursion gambling boat.  The for-profit organization must also be licensed by the Commission.

9.     Prior to a gaming license being issued, Chapter 99F requires the applicants for a gaming license to complete a background investigation by the Iowa Division of Criminal Investigations.  Such investigation requires disclosure by all officers, directors, agents, principal equity holders of both the non-profit sponsoring organization and the for-profit operator.

10.    A management agreement for the operation of a casino entered between the non-profit sponsoring organization and the for-profit operator must also be approved by the Commission.

11.    As discussed below, in 2010, CCDC and the Defendants became parties to the Management Agreement.  The parties' Management Agreement provides that the for-profit operator will be CCDC's "sole and exclusive operator and manager of the gambling games that CCDC is licensed to operate during the term of this Agreement."  *See* Management Agreement, attached hereto as Exhibit 1 at ¶ 3.

12.    The for-profit operator's duties include:

       a.     Assisting CCDC in maintaining its gaming license;

3

b.    Providing all personnel, equipment and services necessary for the operation of the gaming facility; and

c.    Performing all management functions for the operation of the gaming facility.

*See* Management Agreement, attached hereto as Exhibit 1 at ¶ 4.

13.    The Management Agreement, as a personal service contract, limits the parties' ability to assign the agreement. Specifically, the Management Agreement states as follows:

> 12.    Assignment to Limited Partnership.    [CCDC] acknowledges that [HGI] may elect to assign its rights and delegate its duties under this Agreement to an Iowa corporation which is controlled by [HGI] or to a Limited Partnership in which a [HGI] controlled corporation will be the general partner.

*See* Management Agreement, attached hereto as Exhibit 1 at ¶12.

## II.    The Operation of the Lakeside Casino.

14.    In 1997, CCDC executed the above described Management Agreement with the former operator of the Lakeside Casino, Southern Iowa Gaming Co ("Southern Iowa"). In 2004, Southern Iowa sold its operating assets to Herbst Gaming, Inc. ("Herbst"). In connection with the sale of Southern Iowa's assets and as required by the Management Agreement, in September 2004, CCDC executed an agreement which provided its consent to the assignment of the Management Agreement to Herbst (the "Consent to Assignment"). *See* Consent to Assignment, attached hereto as Exhibit 2.

15.    In March 2009, Herbst filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada. The Bankruptcy Code provides for extraordinary powers for an entity to assume and assign a contract. For example, the Bankruptcy Code provides a debtor with the right to assume and assign an executory contract *notwithstanding* any contrary provisions

4

precluding assignability or transferability in the contract itself. However, once the bankruptcy has been dismissed or the contract has been assigned, the debtor or the assignee is bound by all terms in the contract, including all contract provisions that restrict the assignment or transfer of the contract.

16.     During the bankruptcy proceedings, Herbst was allowed to assume both the Management Agreement and the Consent to Assignment and transfer them to the new entity emerging from bankruptcy, HGI-Gaming, LLC, n/k/a Affinity Gaming, LLC. Pursuant to applicable bankruptcy law but contrary to language in the Management Agreement and the parties' previous dealings, Herbst was allowed to transfer the Management Agreement to Affinity without CCDC's consent and only subject to approval by the Commission.

17.     The reorganized entity that emerged from bankruptcy, Affinity, is a separate company from the debtor, Herbst. Affinity and HGI-Lakeside are not successor entities of the debtor, Herbst, but are separate and distinct corporations. Specifically, upon information and belief, Affinity and HGI-Lakeside are comprised of one hundred and forty-two [142] of the former lenders and creditors of Herbst. Upon information and belief, the owners of Affinity and HGI-Lakeside, all financial institutions, have neither operated a casino nor participated in the gaming industry. Rather, upon information and belief, the owners of Affinity and HGI-Lakeside are in the business of making loans and liquidating their collateral for loans that are in default.

18.     After emerging from bankruptcy, CCDC engaged in discussions with the Defendants regarding the parties' relationship. Despite the parties' previous actions where CCDC's consent was obtained prior to transferring the Management Agreement, the Defendants

have represented that they believe the parties' Management Agreement is freely assignable without CCDC's consent.

19.     Upon information and belief, the Defendants intend to sell the Lakeside Casino and will assign the Management Agreement to new owners without obtaining CCDC's consent to the assignment.

## REQUEST FOR DECLARATORY RELIEF

20.     Based on the Management Agreement, attached as Exhibit 1, and the above allegations, Plaintiff seeks a declaration from this Honorable Court that Affinity and/or HGI-Lakeside may not assign the parties' Management Agreement without the consent of CCDC.

WHEREFORE, CCDC prays that this Honorable Court enter an Order:

A.     Declaring that the parties' Management Agreement by its own terms is not freely assignable without CCDC's consent;

B.     Declaring that the parties' Management Agreement is a personal service contract and therefore under Iowa law may not be transferred without CCDC's consent;

C.     Declaring that HGI must reimburse CCDC for all attorneys' fees, costs and expenses that CCDC has incurred in the prosecution of the instant action; and

D.     Granting such other relief as the Court deems appropriate.

Date: March 9, 2012.

Respectfully submitted,

Douglas E. Gross, AT0003056
Rachel T. Rowley, AT0009517

BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone:  515-242-2400
Facsimile:  515-283-0231
E-mail:  gross@brownwinick.com
         rowley@brownwinick.com

ATTORNEYS FOR PLAINTIFF

FROM :CLARKE CO  DEVELOPMENT CO        FAX NO. :16413426353        Jul. 22 2004 04:49PM  P2

# MANAGEMENT AND OPERATION AGREEMENT

This Agreement is entered into this 15TH day of July, 1997, by and between SOUTHERN IOWA GAMING CO., a Iowa corporation (hereinafter called "Southern Iowa") and CLARKE COUNTY DEVELOPMENT CORPORATION, an Iowa non-profit corporation (hereinafter called "Development").

## I. PREMISES

1.      Iowa Code Chapter 99F (the "Act") authorizes the operation of gambling games on excursion boats operating in the State of Iowa. The Act provides that a license for operating gambling games may be granted to a non-profit entity that is a "qualified sponsoring organization". The Act also provides that a license to operate the excursion boat, on which the gambling games will be conducted, may be granted to any partnership or corporation. Furthermore, the Act authorizes a qualified sponsoring organization, that is licensed to operate gambling games, to enter into a management and operation agreement with a person who is an excursion boat licensee, for the operation of the gambling games.

2.      DEVELOPMENT is a qualified sponsoring organization. SOUTHERN IOWA is a corporation that intends to obtain a license under the Act for the operation of the excursion boat on which the gambling games will be operated (hereinafter the "Riverboat"). DEVELOPMENT and SOUTHERN IOWA desire to cooperate in a joint license application to pursue these activities.

3.      DEVELOPMENT and SOUTHERN IOWA desire to establish this Operation and Management Agreement, whereby DEVELOPMENT will authorize SOUTHERN IOWA as its sole and exclusive operator and manager of the gambling games that DEVELOPMENT is licensed to operate during the term of this Agreement (hereinafter "Gambling Games") (unless terminated as hereinafter provided or upon the non-approval of SOUTHERN IOWA by the Iowa Racing and Gaming Commission). The operation of such Gambling Games will be conducted exclusively on the Riverboat to be operated by SOUTHERN IOWA.

# EXHIBIT 1

## II. AGREEMENT

NOW THEREFORE, in consideration of the mutual agreements herein contained DEVELOPMENT and SOUTHERN IOWA agree:

### 1. Appointment of Operator and Manager.

A.      Subject to the terms and conditions of this Agreement, DEVELOPMENT hereby selects and appoints SOUTHERN IOWA as its exclusive operator for the purpose of conducting Gambling Games on the Riverboat to be operated by SOUTHERN IOWA during the term of this Agreement unless terminated as hereinafter provided or non-approval of SOUTHERN IOWA by the Iowa Racing and Gaming Commission. DEVELOPMENT also agrees to act as the "Qualified Sponsoring Organization," as that term is used in Iowa Code Chapter 99F, in connection with the license application(s) of DEVELOPMENT and SOUTHERN IOWA to the Iowa Racing and Gaming Commission. The appointment of SOUTHERN IOWA as exclusive operating and management agent is subject to the condition subsequent that at no time during the term of this Agreement shall SOUTHERN IOWA cause such license (or any renewal or replacement license) to be suspended, revoked or terminated for a period in excess of one hundred twenty (120) days.

B.      Subject to the terms and conditions of this Agreement, SOUTHERN IOWA hereby accepts the responsibility of operating and managing Gambling Games for DEVELOPMENT, to the extent that such Gambling Games are hereafter authorized by the Iowa Racing and Gaming Commission and in accordance with the provisions of Iowa Code Chapter 99F.

C.      The term of this Agreement shall be five (5) years. SOUTHERN IOWA shall also have nine (9) exclusive Options to Extend this Agreement for additional five (5) year terms from the expiration of the then current term.

### 2. License Applications.

A.      DEVELOPMENT and SOUTHERN IOWA agree to cooperate fully and quickly in the preparation and filing of all documentation required by the Iowa Racing and Gaming Commission. DEVELOPMENT and SOUTHERN IOWA will seek approval for a license to conduct the Gambling Games and the Riverboat under Iowa Code Chapter 99F, in conformance with the rules and regulations of the Iowa Racing and Gaming Commission.

B.      Both DEVELOPMENT and SOUTHERN IOWA acknowledge that an important part of the license application procedure is the completion of background investigations by the Iowa Division of Criminal Investigations. Such investigations will require disclosure by all officers, directors, agents and principal equity

FROM : CLARKE CO  DEVELOPMENT CF        FAX NO. :16413426353          Jul. 22 2004 04:51PM  P4

holders (hereinafter collectively referred to as "Insiders") of both DEVELOPMENT and SOUTHERN IOWA. Both DEVELOPMENT and SOUTHERN IOWA agree to compile such information from their respective Insiders immediately. In the event that such information reveals that an Insider exists who would not meet the requirements of the Division of Criminal Investigation, or the Iowa Racing and Gaming Commission, or the requirements of Chapter 99F, such individual shall be terminated (if he or she is a employee), or removed (if he or she is a director), or their interest in SOUTHERN IOWA eliminated (if he or she is a partner or stockholder in SOUTHERN IOWA). The preceding sentence shall apply throughout the term of this Agreement.

     C.    DEVELOPMENT agrees throughout the term of the Agreement to undertake all actions necessary to: (i) continue its corporate status, in good standing, as an Iowa non-profit corporation; (ii) obtain and continue its status as an exempt non-profit entity under Section 501 of the Internal Revenue Code; and (iii) continue its status as a qualified sponsoring organization under Iowa Code Chapter 99F.

    3.    <u>Costs of License Applications: Money Advance for DEVELOPMENT.</u>

    The full costs of all license applications, including application fees and other fees charged by the Iowa Racing and Gaming Commission shall be paid by SOUTHERN IOWA.

    4.    <u>Services to Be Performed by Agent.</u>

    A.    DEVELOPMENT hereby appoints SOUTHERN IOWA as its sole and exclusive agent, and SOUTHERN IOWA agrees as such agent, to perform the following services for DEVELOPMENT:

    (i)    To assist DEVELOPMENT in retaining its license to operate the Gambling Games and to assist DEVELOPMENT in meeting all requirements for the satisfaction of all legal and fiscal requirements for the maintenance and continuation of such license.

    (ii)    To provide all personnel, equipment and services necessary for the operation of the Gambling Games, including but not limited to: croupiers, cashiers and other Gambling Games employees, training, janitorial, garbage removal, security, insurance, legal and accounting services, advertising, program printing and distribution, and other related operational services. SOUTHERN IOWA shall have exclusive control over the management affairs in the operation of the Gambling Games.

    (iii)    To generally perform all management functions and to make all management decisions necessary or appropriate for the operation of the Gambling Games. SOUTHERN IOWA agrees to prepare any and all reports to the Iowa Racing and Gaming Commission as may be required by the rules and regulations of said Commission and the Act. All books and records of the Gambling Games shall be

available for inspection during normal business hours. SOUTHERN IOWA shall cooperate with DEVELOPMENT and its accountants in providing operational information that is required by the Iowa Racing and Gaming Commission.

(iv)   SOUTHERN IOWA shall indemnify and hold DEVELOPMENT, its directors and officers harmless from any and all liability arising from the performance by SOUTHERN IOWA of the above-described services.

B.   All costs, expenses, fees, salaries and compensation advanced or incurred by SOUTHERN IOWA under this Section 4 shall be paid by SOUTHERN IOWA at its sole cost.

5.   Proceeds from Boat Operations, Gambling Games and Admissions.

A.   Proceeds.  All proceeds received by SOUTHERN IOWA from the operation of the Riverboat (gambling or non-gambling) shall be the sole and exclusive property of SOUTHERN IOWA, subject to the terms of this Agreement and Chapter 99F of the Iowa Code. Such proceeds include, but are not limited to, gambling income, passenger fares, food and beverage sales, entertainment, souvenir and gift sales, and beauty and other personal services.

B.   Admission Fee.  On a monthly basis and not later than the 15th of each succeeding month, SOUTHERN IOWA shall pay DEVELOPMENT the sum of fifty cents ($.50) for each Patron admitted on the excursion gambling boat ("Admission Fee"). "Patron" shall not include employees, non-gaming visitors of SOUTHERN IOWA or vendors.

6.   Default; Arbitration; Verification.

A.   Default Defined.  In the event that one Party to this Agreement believes that the other Party is in default hereunder, the non-defaulting Party shall send written notice of such alleged default to the allegedly defaulting Party. During the thirty (30) day period following receipt of such notification, the allegedly defaulting Party shall have the right to cure any alleged default.

B.   Rights of DEVELOPMENT.  In the event SOUTHERN IOWA is in default, and such default is not cured within thirty (30) days after receipt of written notice of default, then DEVELOPMENT shall have the option to terminate this Agreement, by notifying SOUTHERN IOWA of such termination in writing.

C.   Rights of Operator.  In the event that DEVELOPMENT is in default, and such default is not cured within thirty (30) days after receipt of written notice thereof, then SOUTHERN IOWA shall have the option to terminate this Agreement by notifying DEVELOPMENT of such termination in writing.

4

D.    Verification. Each of the Parties to this Agreement shall have the right to verify performance by the other Party. To facilitate such verification, each Party agrees to allow representatives of the other Party reasonable access to each Party's books and records of the Riverboat and on-shore related facilities and activities, including but not limited to Gambling Games, and the Gambling Games facilities. SOUTHERN IOWA shall furnish to DEVELOPMENT copies of all reports and documents filed by SOUTHERN IOWA with the Iowa Racing and Gaming Commission, and shall furnish to DEVELOPMENT annual audited statements.

7.    Insurance and Indemnification.

A.    Indemnification. SOUTHERN IOWA shall indemnify and hold DEVELOPMENT, and its directors and officers, harmless against and from any liability and/or claims for loss or damage to property, or for the injury to or death of any person arising out of SOUTHERN IOWA's operation of the Gambling Games, the Riverboat, the docking facilities or on-shore facilities and activities.

B.    Insurance. Beginning on the date that SOUTHERN IOWA receives possession of the completed Riverboat, SOUTHERN IOWA shall maintain a policy or policies of liability insurance covering the Riverboat and any docking facilities and on-shore facilities owned or leased by SOUTHERN IOWA, providing personal injury, death and property damage liability coverage not less than Five Million Dollars ($5,000,000). SOUTHERN IOWA shall also maintain workers compensation insurance as required by law. Such policies of insurance shall name DEVELOPMENT as an additional or co-insured Party.

8.    Support of DEVELOPMENT. Further, DEVELOPMENT agrees to use its best efforts to assist SOUTHERN IOWA in obtaining necessary licensing and permits for liquor, food, signage, amusements and similar permitted activities.

9.    No Partnership. The Parties hereunder are acting as independent contractors and this Agreement shall not be construed to create any partnership or joint venture. SOUTHERN IOWA is acting in the limited capacity set forth herein and no Party hereto shall have the authority to bind the other or create any liability on behalf of the other. No provision hereof shall be construed to confer any rights or benefits on any other persons than the Parties hereto.

10.    Approval of Iowa Racing and Gaming Commission - Compliance with Iowa Law. This Operation and Management Agreement, and any future amendments to this Agreement, shall be binding obligation of both SOUTHERN IOWA and DEVELOPMENT until such time as this Agreement, or future amendments, if any, and license renewal applications of DEVELOPMENT, are rejected by the Iowa Racing and Gaming Commission. The Parties agree to cooperate in the submission of this Agreement and any future amendments to the Iowa Racing and Gaming Commission. Both DEVELOPMENT and SOUTHERN IOWA jointly accept responsibility for compliance

with the laws of Iowa and the rules of the Iowa Racing and Gaming Commission. If the application for licensure is rejected due to unsuitability of DEVELOPMENT or an officer or director of DEVELOPMENT, then this Agreement shall be null and void if the issue of suitability is not resolved to the satisfaction of the IRGC within thirty (30) days.

    11.    <u>Ownership of Gambling Games Equipment.</u> All Gambling Games equipment and supplies shall be the property of SOUTHERN IOWA. Nothing in this Agreement shall be construed to grant DEVELOPMENT any interest in the personal or real property owned by SOUTHERN IOWA, including, without limitation, (i) the Riverboat and the fixtures and personal property attached to or located on the Riverboat; (ii) the docking facilities, landings and real property.

    12.    <u>Assignment to Limited Partnership.</u> DEVELOPMENT acknowledges that SOUTHERN IOWA may elect to assign its rights and delegate its duties under this Agreement to an Iowa corporation which is controlled by SOUTHERN IOWA or to a Limited Partnership in which an SOUTHERN IOWA controlled corporation will be the general partner.

## III. MISCELLANEOUS

    1.    <u>Governing Law.</u> This Agreement shall be construed and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of Iowa. The Parties agree and acknowledge that all terms and provisions hereof are subject to applicable law, including the statutes of the State of Iowa with respect to gaming and any rules and regulations promulgated by the Commission.

    2.    <u>Event of Force Majeure.</u> Any Party whose performance under this Agreement is prevented by an Event of Force Majeure shall give prompt notice of the Event of Force Majeure to the other Party and shall thereafter use its best efforts to minimize the duration and consequences of, and to eliminate, any such Event of Force Majeure. No Party shall have any liability to the other Party for a breach of this Agreement resulting from an Event of Force Majeure.

    3.    <u>Headings.</u> The table of contents and the headings of the several sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

    4.    <u>Entire Agreement, Amendments and Waivers.</u> This Agreement, together with all exhibits hereto, constitutes the entire Agreement among the Parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous Agreements, understandings, negotiations and discussions, whether oral or written, of the Parties. There are no other Agreements among the Parties in connection with the subject matter hereof except as specifically set forth herein or contemplated hereby. Any supplement, modification or waiver of this Agreement shall be in writing and agreed to by all Partners. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute

.FROM :CLARKE CO  DEVELOPMENT CI       FAX NO. :16413426353         '.il. 22 2004 04:54PM  P7

a waiver of any other provision hereof (whether or not similar) nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

5.     Remedies.  The Parties hereto acknowledge that the rights granted hereunder are unique and that irreparable damage would result if this Agreement is not specifically enforced and that, therefore, the rights and obligations of the Parties under this Agreement may be enforced by a decree of specific enforcement issued by a court of competent jurisdiction and appropriated equitable relief may be applied for and granted in connection therewith.

6.     Estoppel Certificates.  Each Party agrees to promptly execute estoppel certificates to the other Party upon request. If:

A.     the requesting Party delivers an estoppel certificate request to the certifying Party in accordance with the notice provisions of this Agreement, and

B.     ten (10) business days have elapsed from the effectiveness of such estoppel certificate request and during such period the certifying Party has failed to execute and deliver to the requesting Party (or its attorneys or the third Party(ies) designated by such requesting Party) the estoppel certificate counterpart(s) provided by the requesting Party, setting forth with reasonable specificity any alleged exceptions to the statements required to be contained in such estoppel certificate, then the certifying Party shall be deemed for all purposes, whether or not this lease has been terminated or is otherwise in full force and effect, to have executed and delivered to the third Party and the requesting Party an estoppel notice, dated as of the effective date of the estoppel certificate request, in the form submitted by the requesting Party to the certifying Party.

7.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8.     Notices.

A.     All notices required or permitted to be given hereunder shall be given by registered mail, in person (in writing), by telecopy or by telex and addressed as follows:

To Southern Iowa Gaming Co:
SOUTHERN IOWA GAMING CO.
101 Jules Street
St. Joseph, Missouri  64501

To Clarke County Development Corporation:
CLARKE COUNTY DEVELOPMENT CORPORATION
139 North Main
Osceola, Iowa 50213

B.    Any Party may from time to time change its address for the purpose of notices to that Party by a similar notice specifying a new address, but no such change shall be deemed to have been given until it is actually received by the Party sought to be charged with its contents.

C.    All notices and other communications required or permitted under this Agreement which are addressed as provided in this Section if delivered personally or by air courier, shall be effective upon delivery; and, if delivered by mail, shall be effective upon deposit in the United States mail, postage prepaid.

9.    No Third-Party Beneficiary.  This Agreement is being entered into solely for the benefit of the Parties hereto, and the Parties do not intend that any other person shall be a third-party beneficiary of the representations, warranties, agreements or covenants made by any Party contained in this Agreement.

10.    Severability.  In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein shall, for any reason, be held invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision of this Agreement or any other such instrument.

11.    Successors and Assigns.  Subject to the restrictions on transfer and assignment herein contained, the terms and provisions of this Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, personal representatives, estates, heirs and legatees of the respective Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

SOUTHERN IOWA GAMING CO.

By: _____
Its: _____
Date: _____7-15-97_____

CLARKE COUNTY DEVELOPMENT CORPORATION

By: _____
Its: _____President_____
Date: ____7-15-97_____

8

Exhibit #8

## AMENDMENT TO MANAGEMENT AND OPERATION AGREEMENT

THIS Amendment to Management and Operation Agreement entered into this 15ᵀᴴ day of July, 1997 by and between **SOUTHERN IOWA GAMING CO.** (hereinafter called "Southern Iowa") and **CLARKE COUNTY DEVELOPMENT CORPORATION**, and Iowa Non-Profit Corporation (hereinafter called "Development") as follows:

WHEREAS, the parties have entered into a Management and Operation Agreement, and

WHEREAS, said Agreement requires Southern Iowa to pay $ .50¢ per patron gaining entry to the proposed vessel, and

WHEREAS, the parties believe it is more beneficial to assess a percentage of Adjusted Gross Revenue,

NOW THEREFORE BE IT AGREED:

1.     Paragraph 5. B. of the Management and Operation Agreement is hereby deleted and the following inserted in lieu thereof:

"B. Admission Fee." On a monthly basis and not later than the 15th day of each month, Southern Iowa shall pay Development a sum equal to 1.5% of the previous month's Adjusted Gross Gaming Revenue.

2.     Other than as amended by paragraph one hereof, all remaining terms and conditions of the Management and Operation Agreement shall remain the same.

SOUTHERN IOWA GAMING CO.

By: _____

Its: _____

Date: _7-15-97_____

CLARKE COUNTY DEVELOPMENT CORPORATION

By: _____

Its: _President_____

Date: _7-15-97_____

## AGREEMENT

THIS AGREEMENT is made and entered into effective as of the ___ day of September 2004, by and among the CITY OF OSCEOLA, IOWA (the "City"), the OSCEOLA WATER WORKS BOARD OF TRUSTEES (the "Water Board"), CLARKE COUNTY DEVELOPMENT CORPORATION ("CCDC"), SOUTHERN IOWA GAMING CO. ("Southern Iowa") and HERBST GAMING, INC. or HGI-LAKESIDE, INC. ("Herbst").

WHEREAS, CCDC and Southern Iowa are parties to a certain Management and Operation Agreement dated July 15, 1997 (as previously amended, hereafter referred to as the "Management Agreement"); and

WHEREAS, the City, the Water Board and Southern Iowa are parties to a certain Agreement And Lease dated August 19, 1997 (as previously amended, hereafter referred to as the "Lease"); and

WHEREAS, Southern Iowa has agreed to sell its operating assets to Herbst, and in connection therewith, Southern Iowa and Herbst have requested that CCDC, the City and the Water Board consent to the assignment of the Management Agreement and the Lease by Southern Iowa to Herbst; and

WHEREAS, as a condition to such consents, CCDC, the City and the Water Board have required that Southern Iowa and Herbst enter into and perform their respective obligations under this Agreement.

NOW THEREFORE, for good and valuable consideration, the parties hereby agree as follows:

1.    <u>Initial Payment</u>.  In consideration for the execution and delivery of this Agreement by CCDC, the City and the Water Board, and as a condition precedent to such parties' obligations hereunder, and if, and only if, Herbst acquires the assets of Southern Iowa pursuant to the Asset Purchase and Sale Agreement described below, Southern Iowa shall, immediately upon and subject to the later to occur of (a) approval by the Iowa Racing and Gaming Commission ("IRGC") of Herbst (or a Herbst affiliate) as the operator of the excursion gambling boat known as Lakeside Casino Resort (the "Casino"), and (b) closing of the transactions contemplated by that certain Asset Purchase and Sale Agreement dated July 20, 2004, between Southern Iowa and Herbst, pay the amount of Three Million Two Hundred Thousand Dollars ($3,200,000) (the "Initial Payment") to the City.  CCDC, the City and the Water Board agree that such amount shall be placed in an escrow fund under the jurisdiction of the City, and to otherwise be administered pursuant to that certain Joint Resolution dated September 2, 2004 adopted by the City, CCDC and the Water Board (which resolution provides, among other things, that such funds shall be "distributed 100% for the purposes described in Iowa Code, 99B.7, Subsection 3, paragraph b" – i.e., educational, civic, public, charitable, patriotic or religious uses). The parties expressly agree that if Herbst does not acquire the Casino for any reason, then the Initial Payment shall not be payable hereunder.

2.    <u>Future Payments</u>.  In addition to the Initial Payment described in Section 1 above, and commencing as of the eighth anniversary of the Initial Payment, and continuing thereafter for so long as either the Management Agreement or the Lease remains in effect, Herbst shall pay to the City One Percent (1%) of Herbst's (or Herbst's affiliate's, if a Herbst affiliate is the operator of the Casino) annual adjusted gross receipts from the Casino, with the timing to be as provided for payments to the Treasurer of the State of Iowa in Iowa Code Chapter 99F.11. CCDC, the City and the Water Board agree that such funds shall be placed in the escrow fund described in Section 1 above, and shall otherwise be administered pursuant to that certain Joint Resolution dated September 2, 2004 adopted by the City, CCDC and the Water Board.

Notwithstanding the preceding paragraph of this Section, the parties acknowledge and agree that Herbst shall be entitled to a credit of up to Fifty Percent (50%) of the amounts otherwise payable under this Section 2 for any expenditures by Herbst (or Herbst's affiliates) for new capital improvements made within Clarke County, Iowa for hotel expansion/renovation, marina improvement, lakeside development, recreational opportunities or other landside development following Herbst's (or Herbst's affiliate's) purchase of Southern

1

## EXHIBIT 2

Iowa's operating assets. Such capital improvements shall specifically exclude gaming devices/equipment, gaming facility or casino floor expansion or renovation, development of a truck stop type facility, and any expenditures for general repairs or maintenance. These credits may begin accruing immediately upon IRGC's approval of Herbst (or a Herbst affiliate) as the operator of the Casino and shall be usable for an indefinite time period. Additional credits shall continue to accrue as eligible capital expenditures are made as provided in this paragraph. Herbst shall provide CCDC, the City and the Board with reasonable documentation verifying such expenditures on an annual basis. Upon request, CCDC, the City or the Water Board may audit Herbst's (and Herbst's affiliates') records relating to such expenditures during normal business hours.

3.     Consent to Assignments. Upon, and subject to, receipt of the Initial Payment described in Section 1 above and the execution of the Lease Amendment described in Section 7 below: (i) CCDC, the City and the Water Board shall be automatically deemed to have consented to the assignment of the Management Agreement and the Lease by Southern Iowa to Herbst (or its affiliate); and (ii) CCDC, the City and the Water Board agree to execute such additional documents as may be reasonably requested to confirm such consent.

4.     Scope. CCDC, the City and the Water Board acknowledge and agree that the payments and performances required of Southern Iowa and Herbst (or its affiliates) under this Agreement (and under the Management Agreement and the Lease) are in lieu of any other existing statutory rights or remedies as of the date hereof. Such parties further covenant and agree that they are not currently seeking, and have no intention of seeking in the foreseeable future, any statutory change providing additional rights or remedies with respect to the matters that are the subject of this Agreement.

5.     Cooperation. CCDC, the City and the Water Board will cooperate with Southern Iowa and Herbst in the process of transferring and assigning Southern Iowa's business assets to Herbst, provided that such parties are not required to expend any sums or incur any liabilities in so cooperating.

6.     Non-Disparagement. All parties to this Agreement agree that they shall not disparage any other party to this Agreement.

7.     Lease Amendment. Upon and subject to receipt of the Initial Payment described in Section 1 above, the City, the Water Board, Southern Iowa, and Herbst shall enter into a Third Amendment To Agreement And Lease (the "Lease Amendment") in the form attached hereto as EXHIBIT A, the execution and delivery of which is a material inducement to the City and the Water Board to enter into this Agreement.

8.     Interpretation. The payments and performances described in this Agreement are in addition to, and not in lieu of, the parties' respective rights, duties and obligations pursuant to the Management Agreement and the Lease. This Agreement and the Management Agreement and Lease represent the parties' entire understanding with respect to the subject matter hereof. All other representations, promises and agreements relating to the subject matter hereof and not embodied herein or therein are superseded hereby and are of no force or effect. This Agreement shall be binding upon the parties hereto and their successors and assigns.

9.     Agreement Conditioned Upon Herbst Acquisition of Casino. Notwithstanding any other provision herein, the parties hereto expressly understand and agree that this Agreement is conditioned upon and shall be effective only if Herbst acquired the Casino in accordance with the Asset Purchase and Sale Agreement. If Herbst has not acquired the Casino pursuant to the Asset Purchase and Sale Agreement by June 30, 2005, or if the Asset Purchase and Sale Agreement is terminated prior to closing at any time prior to that date, then this Agreement shall be void and of no further force and effect, the parties shall have no further rights or obligations hereunder, the Lease Amendment shall not be effective and the Lease and the Management Agreement shall remain in full force and effect in their forms prior to the execution of this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have duly executed this **AGREEMENT** as of the date first above written.

City of Osceola, Iowa                                Osceola Water Works Board of Trustees

By: _Fred D_____                          By: _____

Its: _MAYOR of OSceolA_                          Its: _____

Clarke County Development Corporation

By: _Fred J. Wood_____

Its: _President_____


Southern Iowa Gaming Co.

By: _____

Its: _____


*The signatures above on behalf of the City of Osceola, Iowa and the Osceola Water Works Board of Trustees are subject to and conditioned upon formal approval by such parties' governing bodies.

3

Herbst Gaming, Inc. / HGI-Lakeside, Inc.

By:_____

Its:_____

**IN WITNESS WHEREOF,** the parties hereto have duly executed this **AGREEMENT** as of the date first above written.

City of Osceola, Iowa

By:_____

Its:_____

Osceola Water Works Board of Trustees

By:_____

Its:_____

Clarke County Development Corporation

By:_____

Its:_____

Southern Iowa Gaming Co.

By: _Bruce D_____

Its: _Vice President_____

3

Herbst Gaming, Inc. / HGI-Lakeside, Inc.

By:

Its: President